## CHAPMAN & DEWEY LUMBER CO. v. HANKS.

### No. 7800.

Circuit Court of Appeals, Sixth Circuit.

June 28, 1939.

Rehearing Denied Oct. 10, 1939.

L. E. Gwinn, of Memphis, Tenn. (King & King, W. Chapman Dewey, and L. E. Gwinn, all of Memphis, Tenn., on the brief), for appellant.

W. P. Armstrong, of Memphis, Tenn., and C. T. Carpenter, of Marked Tree, Ark. (C. T. Carpenter, of Marked Tree, Ark., and Walter P. Armstrong and Benj. Good-

484

man, Jr., both of Memphis, Tenn., on the brief), for appellee.

Before HICKS, SIMONS and ARANT, Circuit Judges.

HICKS, Circuit Judge.

Suit for damages for personal injuries. Verdict and judgment for $15,000.00.

Appellant complains: (1) Of the denial of a directed verdict; (2) of errors in the charge and the court's refusal to submit certain requests to the jury; (3) errors in the admission and exclusion of evidence; (4) the excessiveness of the verdict; (5) prejudicial argument; and (6) an abuse of the court's discretion in overruling certain grounds of the motion for a new trial.

Hanks, thirty-seven years old, an experienced lumber inspector, had been an employee of appellant for eight years. Appellant operated a saw mill and lumber yard. Appellee, while engaged in inspecting lumber on one of appellant's stacks, fell therefrom and was injured.

Generally speaking, the stacks were from 16 to 20 feet high, 4 feet wide and rested on a foundation of two 6 by 6 timbers, one of which was elevated to provide the stack with a slope for drainage. The stack from which appellee fell was made up of boards one inch thick, about six inches wide and fourteen to sixteen feet long, laid seven boards to a layer with intervening spaces for ventilation. Stacking sticks one inch thick were placed between each layer about two feet apart. There is evidence that as a protection to men working on these stacks the sticks should be at least four feet long and should be laid flush with the outside edges of the outside boards. On the day he was injured appellee climbed upon the stack at a place evidently arranged for that purpose and on the side opposite that from which he fell. This stack was the last one on the west side of alley 10 and a tramway ran in front and on the east side of it.

Appellee testified that the inspection work required that he and a stack walker should both be on the stack and that it was his duty to turn each board over with a lumber ruler, measure it and record the result on the tally book which he kept with him; that in inspecting the lumber he generally stood midway between the two ends of the stack but that he had to be all over the stack; that he started in at one side and cleaned the layer off as he went; that he was working with a stack walker who picked up each board after it had been inspected and would walk up to the front or east end of the pile and hand it down to the truck loader who would place it on a tram car.

He testified that they had taken off nine or ten layers; that he "had measured the inside boards, that is, the middle board of the layer, and as the stack walker picked the board up to push it off to the truck loader" he stepped back to let the stack walker by him and that the outside board tipped with him; that he fell about sixteen feet to the ground from the south edge of the stack, his left hip striking one of the foundation timbers which extended out past the edge of the stack.

He testified that he was stunned but did not become unconscious; that the outside board fell and hung on the first stick which projected about six inches and that he "beat it to the ground and it fell across my back"; that he was picked up by the truck loader and stack walker and laid on some lumber on the tram nearby. Asked why the board tipped, he answered: "* * * the stacking sticks did not extend out to the edge of the board, did not support that particular board * * * while I was laying on the tram I looked up and saw that those sticks did not extend out. * * * Then another thing, the instant I stepped on the board and it tipped with me I knew it was not properly supported." And on cross-examination:

"Q. * * * You don't say now that those sticks were not four feet long, do you? A. I did not measure them while I was lying there on the tram looking up to see what caused me to fall. I didn't measure any of those sticks. * * *

"Q. * * * You mean that you looked up and saw that some of these sticks did not come out flush with the south edge of this stack? A. Yes, sir * * * the sticks in the middle of the pile * * * did not extend out flush with the side of the stack here. * * * There were about eight stacking sticks across the line of lumber. I did not see all the sticks. I looked at the middle of the pile. I could not say how many of these sticks * * * were not out to the end of the stack but there were enough that it did not keep me from falling. I do not know as to the others but some right in the middle were not out far enough. I fell from about the middle."

Pulliam, a witness for appellee, testified that before appellee was hurt he "topped the last stack out on the west side" and that in doing so he used irregular sticks—"there was some not long enough, and some long enough; some thin and some thick."

Crabtree, a witness for appellee, who was familiar with the usual and standard methods of stacking lumber, testified in substance that the sticks should extend at least one inch beyond each side of the stack because if the sticks are not as long as the stack is wide and one should step on the outside board it would slide off with him.

■■ We think the motion for a directed verdict was properly denied. The law in Arkansas, as in the States generally, is, that it is the duty of the employer to exercise reasonable care to furnish the employee a reasonably safe place in which to work. An apposite case is Arkadelphia Sand & Gravel Co. v. Knight, 190 Ark. 386, 79 S.W. 2d 71. It would seem useless to cite additional authorities to support such an elemental proposition.

■ There is evidence tending to show that the proximate cause of appellee's injury was that he fell from appellant's lumber stack when he stepped upon a board improperly supported by stacking sticks. It was appellant's duty properly to stack its lumber. We cannot regard this evidence as too improbable or conjectural to support a verdict. It was more than a mere scintilla, it was direct and substantial and must be regarded in the light most favorable to appellee.

■ It is urged that appellee's testimony contradicts itself and is overcome by the overwhelming weight of contradictory evidence but we have no concern with such matters in determining whether the motion for a directed verdict should have been granted. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Rochford v. Penna. Co., 6 Cir., 174 F. 81, 83; Begert v. Payne, 6 Cir., 274 F. 784; Minneapolis, St. Paul & Sault Ste. Marie R. Co. v. Galvin, 6 Cir., 54 F.2d 202.

■ It is pressed upon us that appellee assumed the risk of his injury as a matter of law. The State of Arkansas has not by statute changed the general doctrine touching assumption of risk. The rule is that the employee assumes all the "risks which are obvious or fully known and appreciated." Cincinnati N. O. & T. P. R. Co.

v. Thompson, 6 Cir., 236 F. 1, 3; Thompson v. Tenn. R. Co., 6 Cir., 33 F.2d 18, 20; Carson v. Dierks, 196 Ark. 163, 117 S.W.2d 39; Arkadelphia Sand & Gravel Co. v. Knight, supra.

■ Appellee testified that he had not noticed anything wrong with the sticks up to the time of his injury. It was not his duty to inspect the stacks as such. He had climbed upon the stack on the side opposite to that from which he fell and at a point evidently designed for that purpose. Taking into consideration the testimony touching the work at which he was engaged, and that he was inspecting about four boards per minute, the question of whether he assumed the risk was peculiarly for the determination of a jury.

■ Appellant complains that the charge of the court presented to the jury appellee's theory of the case and failed to present appellant's theory. It is enough to say that the general charge is not reviewable because no exception was taken to any part of it.

■ Appellant presented certain special requests. In its brief it discussed only one of them, to wit: "Unless you find that the plaintiff was hurt as he said, that is, by the end plank tipping with him when he stepped on it, then your verdict must be for the defendant. In other words, if he stepped in a crack or for any other cause he fell off the pile, other than by the said plank tipping and falling with him, and falling off the pile, your verdict should be for defendant."

As indicated by this court in Northern Trust Co. v. Elman, 6 Cir., 72 F.2d 169, we do not think that clarity required that appellant's alternative theory of the accident, i. e., that Hanks stepped in a crack or otherwise lost his balance, be expressly charged. It was implicit in the charge to the effect that "whatever dangers, if any, there were of a man losing his balance and falling from some condition not caused by negligence of defendant, he assumed the risk of them and could not recover of the defendant for an injury that resulted from one of the dangers of his employment." See also Pennsylvania R. Co. v. Berckheimer, 6 Cir., 3 F.2d 269 where requested instructions were properly refused on the ground that they were fully covered by the charge given.

■ Appellant complains of the admission of certain testimony of the witnesses Pulliam and Crabtree. Pulliam testified that he was a lumber stacker at ap-

pellant's mill from 1929 to 1932, and, as indicated above, that he topped off the stack from which appellee fell; that he complained all along to Crabtree, the assistant foreman, of the use of improper sticks, that the sticks were too short and their use created a danger to the lumber inspector and stack walker. Crabtree in the main corroborated Pulliam.

The evidence was relevant to the issue and the only serious question is whether any part of it was too remote. This question was addressed to the sound discretion of the court and we are unable to say that there was an abuse of it.

■ The witnesses Calvert and Smith, both lumber inspectors, testified touching the general practice of stacking lumber. This is assigned as error.

The evidence was relevant not for the purpose of setting up a standard of conduct for appellant, but upon the question as to whether, in its stacking operations, it used a degree of care which reasonably prudent persons would have used under the same or similar circumstances. The court so limited it. See Kansas City Sou. Ry. Co. v. Leslie, 112 Ark. 305, 320, 167 S.W. 83, Ann.Cas.1915B, 834; Oak Leaf Mill Co. v. Littleton, 105 Ark. 392, 400, 151 S.W. 262, and the discussion in Wigmore on Evidence, 2nd ed., Vol. I, Sec. 461, and cases cited under the same section in the 1934 supplement.

■ There was nothing prejudicial in the exclusion of the testimony of Nelson as to the insurance rating of lumber inspectors.

■ The verdict is said to be excessive. This matter was presented to the court in the motion for a new trial. It is not reviewable here except for abuse of discretion. Taking into consideration the testimony touching appellee's injuries, the pain he experienced, the reduction of his earning capacity and his expectancy, we are not warranted in "imputing to judge and jury a connivance in escaping the limits of the law." See Southern Ry. Carolina Division v. Bennett, 233 U.S. 80, 87, 34 S.Ct. 566, 58 L.Ed. 860; Hines v. Smith, 6 Cir., 270 F. 132, 141.

■ Error is assigned upon alleged improper argument of counsel. In the course of his argument counsel said: "They say a board fell on him. What Mr. Hanks said was that Bostick took the board off of him and put it on the tram before the men got there." This statement was challenged and reference was made to the stenographer's record and the correct testimony read. Appellant's counsel then said: "All right" and made no further comment or objection nor did he ask the court to caution the jury to disregard the remark. We find no reversible error in this incident. Grand Trunk Ry. Co. of Canada v. Blay, 2 Cir., 297 F. 605, 608; Knable v. United States, 6 Cir., 9 F.2d 567, 570.

The judgment is affirmed.